# No. 26-5287

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ISAAC TEJADA RUIZ
A205 152 076
*Petitioner-Appellant*

-vs-

TRINITY MINTER
Warden, West Tennessee Detention Facility, et al.,
*Respondents/Appellees*,

## OPENING BRIEF FOR APPELLANT

*From an Order of the Hon., Brian C. Lea, District Judge for the U.S. District Court of the Western District of Tennessee, Western Division, Denying Appellant/Petitioner's Writ of Habeas Corpus under 28 U.S.C. 2241 contrary to this Court's recent holdings in Lopez-Campos v. Raycraft, 2026 WL 1283891 (6th Cir. May 11, 2026)*

Bernal Peter Ojeda
Attorney
Law Offices of Bernal Peter Ojeda
P.O. Box 3664
Westlake Village, CA 91359-0664
Tel: 888-450-2501 – Fax: (866) 569-1898
Email: thewestlakeoffice@gmail.com
Counsel for Petitioner,
Isaac Tejada Ruiz

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Petitioner/Appellant, Isaac Tejada Ruiz ("Mr. Tejada") is an individual and not a nongovernmental corporate party. No corporate disclosure statement is therefore applicable or required in this case.

# TABLE OF CONTENTS

Corporate Disclosure ................................................................................ i

Table of Contents ..................................................................................... ii

Table of Authorities ............................................................................... iv

Statement in Support of Oral Argument ................................................ vi

Jurisdictional Statement .......................................................................... 1

Statement of the Issues ........................................................................... 1

Statement of the Case .............................................................................. 2

A. Facts relevant to the issues presented .............................................. 2

(i) Mr. Tejada's Release on Bond and Transfer of his case to Memphis Immigration Court .................................................................................... 3

(ii) Mr. Tejada's Continuous Residence and Full Compliance with Court Proceedings ............................................................................................... 4

(iii) The governing detention statute in Mr. Tejada's case is not 8 U.S.C. § 1225(b)(2)(A) as alleged but instead is 8 U.S.C. § 1226(a) .................................... 6

B. Procedural history and rulings presented for review ........................ 9

Summary of the Argument ..................................................................... 10

Argument ................................................................................................ 11

Standard of Review ................................................................................ 11

I. The district court erred in requiring prudential exhaustion of Mr. Tejada's statutory detention claim. .................................................................... 11

II.  Under this Court's holding in *Lopez-Campos*, 8 U.S.C. § 1226, not § 1225(b)(2)(A) governs Mr. Tejada's detention ................................................. 12

III. The district court erred in rejecting Mr. Tejada's constitutional claims .......... 14

IV. The district court incorrectly asserted that Mr. Tejada provided no authority to support his claim that his rearrest was unlawful where the Petition distinctly provided such authority ................................................................................ 15

V. The district court erred in failing to authority proper remedy is reversal and remand with instructions to order a prompt bond hearing under 8 U.S.C. § 1226(a) ................................................................................................................ 16

Conclusion ....................................................................................................... 17

Certificate of Compliance

Certificate of Service

Addendum Designation

# TABLE OF AUTHORITIES

**Federal Cases**

*Carmona Hernandez v. Ladwig*, No. 2:26-cv-02051-TLP-atc, 2026 WL ___,
at *7 (W.D. Tenn. Feb. 6, 2026)..................................................................... 8-9

*Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *4
(W.D. Tenn. Oct. 31, 2025) ........................................................................ 9

*Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *6
(W.D. Tenn. Dec. 12, 2025) ........................................................................ 9

*Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891
(6th Cir. May 11, 2026) ........................................................ 1, 10, 12, 13, 17

*Mathews v. Diaz*, 426 U.S. 67, 77 (1976)............................................................. 16

*Rios Pena v. Ladwig*, No. 2:25-cv-03082, 2025 WL 3679766
(W.D. Tenn. Dec. 18, 2025), ...................................................................... 14

*Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ................................. 7

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) ........................ 7

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ................. 16

*Smith v. U.S. Sec. & Exch. Comm'n,* No. 24-3907, 2026 WL 850806
(6th Cir. Mar. 27, 2026) ............................................................................ 12

**Administrative Cases**

*Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) ........................................... 6

*Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981) ...................................... 7

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)................................... 8

**Federal Statutes and Rules**

28 U.S.C. § 1291 ...........................................................................................................

28 U.S.C. § 2241 ...........................................................................................................

8 U.S.C. § 1182(a)(6)(A)(i) ...........................................................................................

8 U.S.C. § 1225(a)(1) ....................................................................................................

8 U.S.C. § 1225(b)(2)(A) ..............................................................................................

8 U.S.C. § 1226(a) .........................................................................................................

Fed. R. App. P. 26.1 ......................................................................................................

Fed. R. App. P. 28 .........................................................................................................

Fed. R. App. P. 32 .........................................................................................................

Fed. R. App. P. 34 . .......................................................................................................

6th Cir. R. 26.1 ..............................................................................................................

6th Cir. R. 34 .................................................................................................................

## ORAL ARGUMENT STATEMENT

Oral argument is <u>not</u> requested by Mr. Tejada because this appeal presents an issue that has been authoritatively decided in *Lopez-Campos v. Raycraft*: whether a noncitizen who has long resided in the interior of the United States and is later arrested by ICE during pending removal proceedings may be detained under 8 U.S.C. § 1225(b)(2)(A), or instead falls under 8 U.S.C. § 1226(a).

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 2241 because Mr. Tejada challenged the legality of his immigration detention while confined in the Western District of Tennessee. Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, RE 1, Page ID # .

The district court entered a final order denying the petition and closing the case on April 1, 2026. Order Granting Leave to File Reply and Denying § 2241 Petition, RE 13, Page ID # 87-95.

This Court has jurisdiction under 28 U.S.C. § 1291 because the order disposed of all claims and ended the case in the district court. Order, RE 13, Page ID # 95. No certificate of appealability is required for an appeal from the denial of relief under 28 U.S.C. § 2241.

The notice of appeal was timely filed under Federal Rule of Appellate Procedure 4(a). Notice of Appeal, RE 1, Page ID # 1.

# STATEMENT OF THE ISSUES

1. Whether the district court erred in requiring prudential exhaustion of Mr. Tejada's statutory detention challenge where the petition sought relief from ongoing physical detention and the agency had already adopted the legal position advanced by the government.

2. Whether, under *Lopez-Campos v. Raycraft*, the district court erred in holding that

8 U.S.C. § 1225(b)(2)(A), rather than 8 U.S.C. § 1226(a), governs the detention of a noncitizen who entered in 2006, lived in Memphis for years, was released on bond in 2012, and was re-detained in 2026 after a traffic stop in the interior.

3. Whether the district court erred in rejecting Mr. Tejada's constitutional claims where the government re-detained him after a long prior release and denied any individualized custody hearing.

4. Whether the proper remedy is reversal and remand with instructions to grant habeas relief to the extent of ordering a prompt bond hearing under 8 U.S.C. § 1226(a).

## STATEMENT OF THE CASE

### A.    Facts relevant to the issues presented

Mr. Tejada is a native and citizen of El Salvador who entered the United States in 2006 when he was 16 years old and has resided in Memphis, Tennessee ever since for the last two decades. Petition, RE 1, Page ID # 4.  In February 2012, DHS served him with a Notice to Appear (Form I-862) charging inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present without being admitted or paroled. Petition, RE 1, Page ID # 4.

The Notice to Appear checked the box indicating: "You are an alien present in the United States who has not been admitted or paroled." It did **not** check the box for "You are an arriving alien." *Id.* The Notice to Appear initially directed Mr. Tejada to

appear before an immigration judge at the Oakdale Federal Detention Center, 1900 E. Whatley Road, Oakdale, Louisiana 71463, "on a date to be set at a time to be set." *Id.* Since his entry, Mr. Tejada has resided continuously in Memphis, Tennessee and he has established a stable residence in Memphis, Tennessee by purchasing and holding real estate properties in the same city and county.

### (i) Mr. Tejada's Release on Bond and Transfer of his case to Memphis Immigration Court

On or about August 30, 2012, ICE released Mr. Tejada from custody on a bond in the amount of $2,500.00. *See* Exhibit 2 (ICE Form I-830E, Notice to EOIR: Alien Address, dated Aug. 30, 2012). Upon release, Mr. Tejada reported his domicile address.

On August 30, 2012, ICE issued a Notice of Change of Address for Immigration Court informing Mr. Tejada that the venue for his removal proceedings had been transferred from the Oakdale Immigration Court to the Memphis Immigration Court, Executive Office for Immigration Review, 167 N. Main St., Room 460, Clifford Davis Federal Building, Memphis, Tennessee 38143. *See* Exhibit 3 (Notice of Change of Address for Immigration Court, dated Aug. 30, 2012, signed by David W. Johnston, Deportation Officer). RE 1-2, Page ID # 10.

On January 11, 2013, the Memphis Immigration Court issued a Notice of Hearing scheduling Mr. Tejada's first master calendar hearing for July 16, 2013, at 9:00 a.m., at 167 N. Main Street, Room 460, Courtroom B, Memphis, Tennessee

38103. *See* Exhibit 4 (Notice of Hearing, dated Jan. 11, 2013). RE 1-2, Page ID # 12.

Mr. Tejada appeared at the Memphis Immigration Court on July 16, 2013, represented by privately retained counsel. On that date, Mr. Tejada filed a timely EOIR-33 Change of Address Form, updating his domicile address. *See* Exhibit 5 (EOIR-33, dated July 15, 2013, received in court July 16, 2013). RE 1-2, Page ID # 14.

On July 16, 2013, the Memphis Immigration Court issued a Notice of Hearing scheduling Mr. Tejada's next master/individual hearing for July 22, 2014, at 8:30 a.m., in Courtroom B. *See* Exhibit 6 (Notice of Hearing, dated July 16, 2013). RE 1-2, Page ID # 16.

Thereafter, ICE released Mr. Tejada from custody on bond in August 2012, and his immigration case was later administratively closed. Petition, RE 1, Page ID # 4; Order, RE 13, Page ID # 88. In March 2026, ICE took him back into custody after a traffic stop in Memphis, and DHS moved to recalendar the removal proceedings. Response to Petition, RE 10, Page ID # 48; Order, RE 13, Page ID # 88.

### (ii) Mr. Tejada's Continuous Residence and Full Compliance with Court Proceedings

From August 2012 through at least July 2014, Mr. Tejada resided continuously in Memphis, Tennessee, complied with all of the conditions of his bond, updated his address with the Immigration Court in compliance with INA § 239(a)(1)(F) and 8 C.F.R. § 1003.15(d)(2), and appeared for scheduled hearings as

instructed.

Mr. Tejada has never been classified as an "arriving alien" seeking entry at a port of entry or border checkpoint. He was arrested, detained, and released on bond years after his initial entry into the United States, while residing in the interior of the country.

Upon information and belief, Mr. Tejada's removal proceedings in Memphis Immigration Court remained pending from 2012 through at least 2014. The record does not reflect that a final order of removal was entered and in fact remains pending a final determination by an immigration judge.

In March of 2026, the Immigration and Customs Enforcement ("ICE") re-arrested Mr. Tejada and held him in its custody at the West Tennessee Detention Facility ("WTDF") in Mason, Tennessee. His re-arrest took place after he was encountered by ICE agents arising from an unremarkable traffic stop incident without any notice or a fair opportunity to be heard.

ICE alleged to have detained Mr. Tejada under the authority of 8 U.S.C. § 1225(b)(2)(A), a provision that when lawfully and properly asserted authorizes mandatory custody of "applicants for admission" a term of art relevant only to noncitizens who are "seeking admission" into the United States at or near our nation's borders at or proximate to the time of their entry.

The referenced statutory authority at 8 U.S.C. § 1225(b)(2)(A) therefore

does not apply to Mr. Tejada because as related above his present arrest is excessively far-distant in time and location from the international border. Far distant in time (20-years) and far-distant from any port of entry (hundreds of miles) from the southern international border.

The rearrest furthermore was unlawful under binding precedent from the Board of Immigration Appeals ("BIA") declaring that once a formal decision is made by the DHS and its delegates, agents and employees that a person taken into civil custody is thereafter released or paroled from custody, the person cannot lawfully be re-arrested absent a material change in circumstances warranting the individual's re-arrest.

### (iii) The governing detention statute in Mr. Tejada's case is not 8 U.S.C. § 1225(b)(2)(A) as alleged but instead is 8 U.S.C. § 1226(a).

The applicable statutory authority for Mr. Tejada's present detention is 8 U.S.C. § 1226(a), which governs the "apprehension and detention" of noncitizens already in the United States. This authority provides a detainee with the availability of discretionary bond determinations if the person arrested can establish that his release from ICE custody does not present a "danger to the community" or a "flight risk". *See*, 8 C.F.R. § 1003.19(h)(3); and see also *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) requiring the same showing of "no danger" to the community or "flight risk" when release is being considered.

As noted above, Mr. Tejada's latest arrest by agents of ICE in March of 2026, was ICE's second arrest because ICE had first arrested Mr. Tejada in Memphis in or about February 28, 2012, when he was first placed in removal proceedings before an immigration judge. The immigration court case was thereafter administratively closed without prejudice based on intervening law changes that allowed Mr. Tejada to file an application for other temporary relief from removal.

Shortly after his initial arrest in or about February 2012, ICE released Mr. Tejada from its custody. And as noted above, the release by ICE of any detainee signifies that the agency conducted a procedural investigation of all available federal data resources and a conclusion was thereafter made that the detainee's release presented neither a danger to the community nor a flight risk.

The BIA's referenced published opinion stated that "[W]here a previous bond determination has been made by an immigration judge" that a noncitizen is not a danger to the community or a flight risk, DHS may not re-detain a noncitizen" absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981). According to another decision, in *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018), that court observed that an attorney representing the federal government informed the court that "DHS has incorporated this holding [*Matter of Sugay*] into its practice, requiring a showing of changed circumstances both where

the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Id.*

Based on this ruling from the Board, ICE's re-arrest and detention of Mr. Tejada is not authorized unless a change of circumstances can support it.

Mr. Tejada argued therefore that he was lawfully entitled to a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a) and its implementing regulations. However, under the present DHS leadership, ICE refused to allow for a bond hearing based entirely on an invalid BIA opinion that has been declared obsolete across the United States, except the fifth and eighth circuits. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that noncitizens who entered without inspection remain "applicants for admission" indefinitely (such as if present in the United States for the past 20 years as Mr. Tejada in this instance) and are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

As an additional reproachable ground fort his re-arrest Respondent's refusal to provide that hearing violates the Immigration and Nationality Act ("INA"), deprives Mr. Tejada of the statutory process to which he is entitled, and violates his Fifth Amendment right to procedural due process. Indeed, this Court has repeatedly held that 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), governs the detention of noncitizens like Mr. Tejada who have been residing in the interior of the United States for years and who are arrested far from the border. *See Carmona Hernandez*

*v. Ladwig*, No. 2:26-cv-02051-TLP-atc, 2026 WL ____, at *7 (W.D. Tenn. Feb. 6, 2026); *Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *4 (W.D. Tenn. Oct. 31, 2025); *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025).

### B.  Procedural history and rulings presented for review

After his rearrest, on March 20, 2026, Mr. Tejada filed a verified petition under 28 U.S.C. § 2241 and complaint for injunctive and declaratory relief, alleging that his detention was unlawfully being treated as mandatory under 8 U.S.C. § 1225(b)(2)(A) rather than discretionary under 8 U.S.C. § 1226(a), and that the detention also violated the Constitution. Petition, RE 1, Page ID # .

The government argued that Mr. Tejada failed to exhaust administrative remedies and that § 1225 governed because he remained an"applicant for admission." Response to Petition, RE 10, Page ID # 47-59. Mr. Tejada replied that exhaustion was futile and that the detention statutes, read in context, placed him under § 1226(a), not § 1225(b)(2)(A). Reply, RE 11-1, Page ID # .

The district court denied the petition. Order, RE 13, Page ID # 87-95. The court held that prudential exhaustion barred the statutory claims, that Mr. Tejada was an applicant for admission subject to mandatory detention under § 1225(b)(2)(A), and that neither the governing statutes nor the Constitution entitled him to a bond hearing. Id. at Page ID # 89-95. Those rulings are presented for

review.

**SUMMARY OF THE ARGUMENT**

The judgment should be reversed. The Sixth Circuit's recent published decision in *Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891(6th Cir. May 11, 2026) controls the core statutory question and confirms that detention in circumstances like these is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A).

First, the district court erred in requiring prudential exhaustion. This habeas petition challenged present physical detention. Prudential exhaustion is discretionary, not jurisdictional, and should not bar review where the challenge is to ongoing confinement and the relevant legal issue had already been fixed at the agency level.

Second, *Lopez-Campos* resolves the statutory issue. Section 1225(b)(2)(A) applies to applicants for admission who are seeking admission. Section 1226(a), by contrast, governs the arrest and detention of noncitizens already in the country pending removal proceedings. Mr. Tejada was detained in the interior, years after entry, after years of residence in Memphis, and after prior release on bond. Under *Lopez-Campos*, that detention falls under § 1226(a).

Third, the district court's constitutional analysis was overbroad. Even if entry-fiction principles remain relevant in some settings, they do not justify re-detention of

10

a long-term interior resident without any individualized custody hearing after prior release.

Fourth, the proper remedy is reversal and remand with instructions to grant habeas relief to the extent of ordering a prompt bond hearing under § 1226(a).

**ARGUMENT**

**Standard of Review**

This Court reviews de novo the denial of habeas relief under 28 U.S.C. § 2241, questions of statutory interpretation, and constitutional questions. To the extent the district court imposed prudential exhaustion as a matter of discretion, that ruling is reviewed for abuse of discretion, with embedded legal conclusions reviewed de novo.

**I.    The district court erred in requiring prudential exhaustion of Mr. Tejada's statutory detention claim.**

Section 2241 imposes no statutory exhaustion requirement on this detention challenge. The district court therefore relied only on prudential exhaustion. Order, RE 13, Page ID # 89-90. But prudential exhaustion is discretionary, not jurisdictional, and courts excuse it where administrative remedies are inadequate, futile, or would inflict irreparable injury from continued detention.

That is this case.  Mr. Tejada challenged present physical confinement without a bond hearing. Every additional day of detention inflicted the liberty deprivation the petition sought to prevent. Petition, RE 1, Page ID # . Requiring

11

exhaustion in that setting would elevate prudential concerns over habeas's core function.

The district court relied on *Smith v. U.S. Sec. & Exch. Comm'n*, No. 24-3907, 2026 WL 850806 (6th Cir. Mar. 27, 2026) to reason that exhaustion is not futile if the agency could theoretically grant relief. Order, RE 13, Page ID # 90. But *Smith* did not involve immigration detention, and it did not require courts to insist on exhaustion where a petitioner challenges ongoing confinement and the agency has already fixed the governing legal rule. In these circumstances, the district court should have reached the merits.

**II.     Under this Court's holding in *Lopez-Campos*, 8 U.S.C. § 1226, not § 1225(b)(2)(A) governs Mr. Tejada's detention.**

The district court's core merits holding cannot stand after *Lopez-Campos*. There, the Sixth Circuit held that § 1225(b)(2)(A) does not govern the detention of long-term interior residents who are arrested inside the United States during pending removal proceedings, and that § 1226(a) governs instead. *Lopez-Campos*. That reasoning applies directly here. Mr. Tejada entered in 2006, lived in Memphis for years, was released on bond in 2012, and was re-detained only in 2026 after a traffic stop in the interior. Petition, RE 1, Page ID # 4; Order, RE 13, Page ID # 88. These facts place him squarely within the category of noncitizens already present in the country whose detention is governed by § 1226(a), not within the class of applicants seeking admission under § 1225(b)(2)(A).

The text and structure of the statutes confirm that conclusion. Section 1225 concerns inspection and detention of those seeking admission. Section 1226 concerns apprehension and detention pending a decision on removal. *Lopez-Campos* confirms that distinction and forecloses the boundless reading of § 1225 adopted below.

The district court treated § 1225(a)(1)'s definition of "applicant for admission" as dispositive. Order, RE 13, Page ID # 91-93. But *Lopez-Campos* makes clear that § 1225(b)(2)(A) must be read as a whole, including its reference to a noncitizen "seeking admission," and in harmony with the statutory structure. Read that way, § 1225(b)(2)(A) does not apply to Mr. Tejada.

The district court's contrary reading also cannot be reconciled with the government's own prior treatment of Mr. Tejada ICE released him on bond in 2012 and allowed him to remain at liberty in the interior for years while removal proceedings remained unresolved. Petition, RE 1, Page ID # ; Order, RE 13, Page ID # 88. That history strongly reinforces that § 1226(a) is the correct detention authority here). The district court's holding represents a *sharp departure* from the settled consensus within the Western District of Tennessee.[1]

---

[1] Within the Western District of Tennessee itself, the decision below stands alone creating an intra-district split as a departure from settled practice producing legal uncertainty and due process concerns within the district. The lower court's outlier ruling is an unprecedented doctrinal anomaly and a departure within the court's rulings inciting legal instability that undermines the uniform application of the law.

While district court decisions are not binding on peers, the unbroken line of authority from every other court to consider this issue underscores the anomalous nature of the decision below.

**III.  The district court erred in rejecting Mr. Tejada's constitutional claims.**

The district court reasoned that because Mr. Tejada was never lawfully admitted, the entry-fiction cases foreclosed any constitutional challenge to detention without a bond hearing. *See* Order, RE 13, Page ID # 93-95.  That reasoning appears overly broad to an objective observer, feeding the impression of a myopic perspective.

Mr. Tejada was not stopped at a port of entry, not placed in expedited removal, and not detained upon first arrival. He had lived in Memphis for years, had previously been released on bond, and was later re-detained in the interior. Petition, RE 1, Page ID # 4; Order, RE 13, Page ID # 88. Even assuming entry-fiction

---

The lower decision does battle with a consistent line of cases from the same court such as *Godinez-Lopez v. Ladwig*, No. 2:25-cv-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025), *Rios Pena v. Ladwig*, No. 2:25-cv-03082, 2025 WL 3679766 (W.D. Tenn. Dec. 18, 2025), and their 2026 progeny—which have repeatedly held that long-term interior residents like Mr. Tejeda are detained under 8 U.S.C. § 1226(a), not instead under § 1225(b)(2)(A). The lower court's ruling *thus* creates a troublesome "jurisdictional lottery" where the outcome of a case depends entirely on which department of the same court is assigned, rather than the merits of the law.

principles retain force in some contexts, they do not answer whether the government may re-detain a long-term interior resident after prior release and deny any individualized custody process.

At minimum, due process required some meaningful opportunity to test the government's basis for continued detention. The liberty interest at stake is substantial. And the government itself acknowledged below that, if § 1226(a) governs, the proper remedy is a bond hearing before an immigration judge. Response to Petition, RE 10, Page ID # 58-59. That concession confirms that individualized custody process is both feasible and appropriate.

**IV.    The district court incorrectly asserted that Mr. Tejada provided no authority to support his claim that his rearrest was unlawful where the Petition distinctly provided such authority.**

In its order, regarding Mr. Tejada's claim that his re-arrest without cause was unlawful, the district court observed that ICE's re-arrest did not violate either the Fourth Amendment or Due Process Clause. RE 13, PageID # 8. The Judge's order asserted therein that the court was unaware of any authority that either provision "[P]revents the Government from detaining an alien in compliance with the law simply because he was earlier wrongly released after he crossed the border illegally. The Court will not impose that extreme rule in the absence of authority compelling it." RE 13, PageID # 8.  In fact, the district court further erroneously found that no governing statutes or the Constitution's clauses "guarantee Petitioner an

15

individualized bond hearing in connection with removal proceedings." RE 13, PageID # 9 where the plaint text of §1226(a) and the longstanding constitutional principle that *all persons* are guaranteed due process of law in our Republic.[2]

**V.    The district court erred in failing to authority proper remedy is reversal and remand with instructions to order a prompt bond hearing under 8 U.S.C. § 1226(a).**

Where a district court denies habeas relief under the wrong detention statute, the appropriate remedy is reversal and remand with instructions to grant relief to the extent of ordering a prompt bond hearing under the correct statute. That is the proper disposition here.

The government itself argued below that if § 1226(a) governs, the proper relief is a bond hearing before an immigration judge rather than continued detention under § 1225(b)(2)(A). Response to Petition, RE 10, Page ID # 58-59. At minimum, this Court should reverse and remand with instructions that Mr. Tejada receive a prompt individualized bond hearing under § 1226(a).

---

[2] The Supreme Court has long settled the notion that *all aliens* within the United States, including those who entered unlawfully, are entitled to the constitutional protections and may be expelled *only* after proceedings conforming to traditional standards of fairness encompassed in due process of law. *Shaughnessy v. United States* ex rel. *Mezei*, 345 U.S. 206, 212 (1953); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.").

## CONCLUSION

Pursuant to this Court's recent holding in *Lopez-Campos v. Raycraft* supra,

the Court should reverse the judgment holding that 8 U.S.C. § 1226(a) governs Mr.

Tejada's detention and remand with instructions to grant the writ. Alternatively, the

Court should vacate the judgment and remand for further proceedings consistent

with *Lopez-Campos.*

Respectfully submitted,

//s//

Bernal Peter Ojeda
P.O. Box 3664
Westlake Village, CA 91359-0664
Tel: 888-450-2501
Email: thewestlakeoffice@gmail.com
Counsel for Petitioner
Isaac Tejada Ruiz

# DESIGNATION OF RELEVANT DOCUMENTS

6th Cir. Rule 30(g)(2) and 6th Cir. Rule 30(b)(4)

**Item description**                                                    **RE & Page ID #**

Petition for Writ of Habeas Corpus 28 USC § 2241-76 ................ RE 1 Pg ID# 1-20

Exhibits to Petition .............................................................. RE 1-2, Pg ID# 23-38

Order Directing Service and Response...................................... RE 6 Pg ID# 40-41

Respondents' Response to OSC ................................................ RE 10 Pg ID# 47-60

Petitioner's Reply to Respondents' Return ............................. RE 11.1 Pg ID#67-76

Order Denying Petition.............................................................. RE 13 Pg ID# 87-95

Judgment.......................................................................................RE 14 Pg ID# 96

Notice of Appeal........................................................................RE 15 Pg ID# __

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

Pursuant to Fed. R. App. P. 27(d)(1), 27(d)(2)(A), (or 27(d)(3)(C) if a reply to a motion), 28(a)(10); 32(a)(6); 32(g)(1) and 5th Cir. R. 32.3; 35(b)(2)(A), or 40(b)(1) as applicable, I certify that the attached brief complies with the above-referenced limits as follows:

1. The writing or reply uses proportionally spaced Times New Roman typeface, and 14 typeface points;

2. And contains 3,863 words, including foot notes.

/s/_Bernal Peter Ojeda_____
Bernal Peter Ojeda
Attorney for Appellants
Post Office Box 3664
Westlake Village, CA 91359-0664
Dated: 6/01/2026        Telephone (888) 450-2501

**CERTIFICATE OF SERVICE**

**All Case Participants Are CM/ECF Participants**

I hereby certify that on today's date, I electronically filed the foregoing papers with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 

 

  /s/ Bernal Peter Ojeda
Bernal Peter Ojeda
Attorney for Petitioner
Post Office Box 3664
Westlake Village, CA 91359-0664
Dated: 6/01/2026       Telephone (888) 450-2501