# No. 26-5287

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

ISAAC TEJADA RUIZ
A205 152 076
*Petitioner-Appellant*

-vs-

TRINITY MINTER
Warden, West Tennessee Detention Facility, et al.,
*Respondents/Appellees*,

## PETITIONER'S OPPOSITION TO FEDERAL RESPONDENTS' INEPT MOTION TO DISMISS FOR LACK OF JURISDICTION

Bernal Peter Ojeda
Law Offices of Bernal Peter Ojeda
P.O. Box 3664
Westlake Village, CA 91359-0664
Tel: 888-450-2501
Email: thewestlakeoffice@gmail.com
Counsel for Petitioner
Isaac Tejada Ruiz

**TABLE OF CONTENTS**

Page #

I.   INTRODUCTION ................................................................. 1

II.  THE FEDERAL RESPONDENTS HAVE NOT ESTABLISHED MOOTNESS................................................................. 4

III. THE FEDERAL RESPONDENTS NEVER ADDRESS THE CONTROLLING ARTICLE III STANDARD ............................................. 7

IV. SIXTH CIRCUIT IMMIGRATION DETENTION JURISPRUDENCE ................................................................. 11

V.  THE FEDERAL RESPONDENTS' AUTHORITIES DO NOT RESOLVE THIS QUESTION ................................................. 16

VI.  THE FEDERAL RESPONDENTS' MOTION IMPROPERLY RELIES ON FUTURE EVENTS ................................................. 18

VII.  EVEN IF MOOT, THE FEDERAL RESPONDENTS ARE NOT ENTITLED TO THEIR REQUESTED RELIEF ............................. 19

CONCLUSION ................................................................. 22

**TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. Smith*, 558 U.S. 87 (2009) ..................................................... 3, 4, 21, 22

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ..................................... 9, 15

*Bacilio-Sabastian v. Barr*, 980 F.3d 480 (6th Cir. 2020) ........................... 6, 10, 14

*Calderon v. Moore*, 518 U.S. 149 (1996) ..................................... 5, 6, 16-18

*Camreta v. Greene*, 563 U.S. 692 (2011) .......................................... 20

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ................................. 9-11, 16

*Chafin v. Chafin*, 568 U.S. 165 (2013) ..................... 2-3, 5-7, 9-11, 13-18, 21-22

*Church of Scientology of Cal. v. United States,*

506 U.S. 9 (1992) ......................................................2, 4-5, 7, 10-11, 13-17, 21-22

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) .................................. 16

*Hassoun v. Searls*, 976 F.3d 121 (2d Cir. 2020) ............................................. 11, 14

*Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891

(6th Cir. May 11, 2026) .....................................................................2, 4, 7-9, 18-21

*Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. 2009) ................................... 6, 10, 12

*Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc) ......... 12, 13, 15

*Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002) ............................................. 6, 10, 14

*Soliman v. United States*, 296 F.3d 1237 (11th Cir. 2002) ........................... 6, 10, 14

*Sule v. INS*, 1999 U.S. App. LEXIS 20637 (6th Cir. 1999) ......................... 6, 10, 14

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994) ............. 20

*United States v. Denedo*, 556 U.S. 904 (2009) ............................................. 6, 9, 11

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ........................3, 4, 20-22

*West Virginia v. EPA*, 597 U.S. 697 (2022) ................................................ 5, 9, 15

**Statutes**

28 U.S.C. § 2241 ................................................................................................. 1

8 U.S.C. § 1225(b) ...............................................................2, 5, 6, 8-9, 13-14, 18

8 U.S.C. § 1226(a) ...............................................................2, 5, 6, 8-9, 13-14, 18

**Other Authorities**

U.S. Const. art. III ...............................................................1, 5, 7-8, 10-12, 16, 18

# No. 26-5287

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

———————————

ISAAC TEJADA RUIZ
A205 152 076
*Petitioner-Appellant*

-vs-

TRINITY MINTER
Warden, West Tennessee Detention Facility, et al.,
*Respondents/Appellees*,

---

**PETITIONER'S OPPOSITION TO FEDERAL RESPONDENTS'
INEPT MOTION TO DISMISS FOR LACK OF JURISDICTION**

---

## I. INTRODUCTION

The Federal Respondents seek dismissal of this appeal from a district court

federal habeas corpus case filed under 28 U.S.C. § 2241, and complaint for

declaratory and injunctive relief, because they contend, Petitioner received an

individualized custody hearing before an Immigration Judge and was released on

bond. From that event, they claim Article III jurisdiction has disappeared because

Petitioner received "the very relief" sought in this appeal.

The Federal Respondents' motion rests on two legal errors.

1

First, The Federal Respondents apply the wrong constitutional standard. A case becomes moot only when it is impossible for a court to grant "any effectual relief whatever" to the prevailing party. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). The Supreme Court has repeatedly applied this test, which asks whether any meaningful relief remains—not whether the appellant received the primary remedy originally sought. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). The Federal Respondents do not attempt to satisfy that standard; they simply assume that because Petitioner ultimately received a custody hearing, every issue in this appeal disappeared. But Petitioner appealed from a judgment holding that his detention arose under 8 U.S.C. § 1225(b), rejecting his contention that it arose under 8 U.S.C. § 1226(a), and denying habeas relief on that basis. §§ 1225(b), 1226(a). That judgment remains in effect and defines the parties' legal relationship.

This Court retains authority to reverse, vacate, or remand this appeal case consistent with *Lopez-Campos*, *v. Raycraft*, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026). That relief would eliminate the precedential effect of an erroneous statutory classification and preserve Petitioner's ability to challenge future detention under the correct statute. A judgment identifying the wrong statutory basis for detention creates consequences beyond immediate custody. The Federal Respondents never explain why this appellate relief is unavailable or why correcting the error lacks value because the challenged custody ended.

2

Second, even assuming arguendo that later events rendered the appeal moot, The Federal Respondents seek a remedy Supreme Court precedent does not permit. "The established practice" when a civil case "has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). This clears the path for future relitigation and eliminates a judgment that escaped review through happenstance. *Id*. at 40. The Court applies this equitable doctrine to prevent unreviewable judgments "from spawning any legal consequences" when appellate review becomes impossible through circumstances beyond the appellant's control. Id. The Federal Respondents never address that doctrine or show why it should not apply.

Under either framework, the motion fails. If effectual relief remains available—and it does—the case is live and the motion must be denied. *Chafin*, 568 U.S. at 172 ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). If instead this Court concludes that intervening events have made merits review impossible, equitable principles require vacatur before dismissal. *Munsingwear*, 340 U.S. at 39–40; *Alvarez v. Smith*, 558 U.S. 87, 94 (2009). The Federal Respondents are not entitled to dismissal that leaves the judgment intact.

This response proceeds as follows. Section II explains why the appeal is not

moot: reversal of the district court's judgment would correct the statutory classification of detention and eliminate ongoing consequences of that error. Section III shows that The Federal Respondents never engage the controlling "any effectual relief whatever" standard. *Church of Scientology*, 506 U.S. at 12.

Section IV explains that this Court's immigration detention jurisprudence confirms that release from physical custody does not automatically moot an appeal challenging the statutory basis for detention. Section V shows that The Federal Respondents' authorities address challenges to detention itself, not challenges to the statutory framework governing detention. Section VI explains why The Federal Respondents' reliance on a pending petition for certiorari in *Lopez-Campos* is irrelevant to this Court's present jurisdiction. Finally, Section VII shows that even if the appeal has become moot, Supreme Court vacatur doctrine requires erasure of the district court's judgment rather than dismissal leaving it in place. *Munsingwear*, 340 U.S. at 39–40; *Alvarez*, 558 U.S. at 94.

## II. THE FEDERAL RESPONDENTS HAVE NOT ESTABLISHED MOOTNESS

The Federal Respondents ask this Court to dismiss because after this Court's opinion in *Lopez-Campos*, an Immigration Judge conducted a custody redetermination hearing and ordered release on bond. They characterize that hearing as providing "the very relief" sought in this appeal. That is too narrow; it

treats one remedy as the entire controversy. Article III requires more.

A case becomes moot only when intervening events make it impossible for a court to grant "any effectual relief whatever" to the prevailing party. *Church of Scientology*, 506 U.S. at 12. Even partial relief preserves a live controversy. *Chafin*, 568 U.S. at 172; *Calderon v. Moore*, 518 U.S. 149, 150 (1996). As long as the parties retain a concrete interest, "however small," in the outcome, the case is not moot. *Chafin*, 568 U.S. at 172. The Federal Respondents bear the burden to show that this once-live appeal has become moot. *West Virginia v. EPA*, 597 U.S. 697, 708 (2022).

They have not carried that burden. Petitioner did not appeal solely to obtain a bond hearing. He appealed from a judgment holding that his detention was governed by § 1225(b), rejecting his contention that it arose under § 1226(a), and denying habeas relief on that basis. The statutory distinction matters: § 1226(a) concerns arrest, detention, and release pending a removal decision, while § 1225(b) supplies a different framework. §§ 1225(b), 1226(a). Petitioner requested, at minimum, a remand for an individualized custody hearing under § 1226(a, but he also sought reversal of the district court's statutory analysis and application of the proper detention statute.

The custody hearing resolved at most one consequence of the judgment. It did not eliminate the judgment, correct the statutory classification, or resolve the

question whether the district court erred in holding that detention arose under § 1225(b) rather than § 1226(a). This Court can still grant meaningful relief by reversing or vacating that judgment and remanding for proceedings under the governing statute. Relief need not be complete to defeat mootness; a partial remedy suffices. *Chafin*, 568 U.S. at 172; *Calderon*, 518 U.S. at 150.

Nor may the Federal Respondents reduce "relief" to release alone, because judicial relief includes any redress or benefit conferred by the court, including reversal and remand. *United States v. Denedo*, 556 U.S. 904, 912 (2009). Nor did release on bond terminate the legal relationship between the parties. Petitioner remains in removal proceedings, under DHS authority, bound by release conditions, and subject to possible re-detention while those proceedings continue. Conditional release can preserve a live controversy where continuing restraints or the possibility of renewed custody leave the petitioner with a concrete stake in the outcome. *Rodriguez v. Hayes*, 578 F.3d 1032, 1039–40 (9th Cir. 2009).

Those ongoing consequences distinguish this case from decisions holding that release mooted a habeas petition where the petitioner sought only release and alleged no continuing collateral consequence or effective remaining remedy. *Bacilio-Sabastian v. Barr*, 980 F.3d 480 (6th Cir. 2020); *Sule v. INS*, 1999 U.S. App. LEXIS 20637 (6th Cir. 1999); *Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002); *Soliman v. United States*, 296 F.3d 1237 (11th Cir. 2002). The Federal

6

Respondents' contrary position collapses the distinction between receiving a hearing and obtaining appellate relief from an adverse judgment. An intervening development does not moot an appeal merely because it affects merits arguments or supplies part of the practical relief requested. The question is whether the Court can still grant effectual relief. *Church of Scientology*, 506 U.S. at 12. Here, it can: reversal or vacatur would alter the operative legal framework governing custody, eliminate the district court's contrary statutory determination, and preserve Petitioner's ability to proceed under the correct statute if custody issues recur.

Because The Federal Respondents do not show that effective appellate relief is impossible, they have not established mootness. Their motion should be denied.

### III. THE FEDERAL RESPONDENTS NEVER ADDRESS THE CONTROLLING ARTICLE III STANDARD

The Federal Respondents' motion fails because it never addresses the controlling constitutional inquiry. The Government assumes that because Petitioner received an individualized custody hearing after *Lopez-Campos*, this appeal became moot. That is not the standard. A case becomes moot only when a federal court cannot grant "any effectual relief whatever" to the prevailing party. *See Church of Scientology*, 506 U.S. at 12. The Court has repeatedly applied this test. *Chafin*, 568 U.S. at 172. Indeed, it has reaffirmed that "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is

not moot," and that "even the availability of a partial remedy is sufficient to prevent a case from being moot." Id. Those decisions establish the rule: the question is whether this Court retains authority to grant effectual appellate relief that will alter the parties' legal rights. The Federal Respondents never undertake that analysis. The Federal Respondents' motion does not contend that this Court lacks authority to reverse or vacate the judgment, or to hold that detention arose under § 1226(a, rather than § 1225(b), consistent with *Lopez-Campos*. Nor does it contend that the judgment no longer carries legal consequences while removal proceedings remain pending. The Federal Respondents simply assert that Petitioner has received "the very relief" requested, mischaracterizing both the appeal and the governing standard.

Petitioner challenged the determination that his detention arose under § 1225(b) and sought reversal and application of the § 1226(a framework. §§ 1225(b), 1226(a). Although his opening brief requested at minimum a custody hearing under § 1226(a), that request did not define the full scope of the appeal; the hearing was the minimum relief necessary to remedy the error, not the entirety of the appellate relief sought. That distinction is critical under Article III.

An appeal does not become moot merely because one consequence of an erroneous judgment has been corrected while review is pending. If that were the rule, a prevailing party could routinely avoid review by voluntarily providing part

of the requested relief while preserving the judgment from which the appeal was taken. The Supreme Court has rejected such a narrow conception of mootness. *Chafin*, 568 U.S. at 172; *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–66 (2016). "Voluntary cessation does not moot a case" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). When mootness results from unilateral conduct rather than happenstance, the party claiming mootness bears a formidable burden. Id.; *West Virginia*, 597 U.S. at 708. Here, substantial appellate relief remains available.

This Court may reverse the district court's interpretation of §§ 1225(b) and 1226(a), vacate the judgment, remand with instructions to apply *Lopez-Campos*, and eliminate the continuing consequences of a judgment that rejects Petitioner's statutory position. Each remedy would alter the parties' legal relationship. Relief need not be complete to defeat mootness. *Chafin*, 568 U.S. at 172. Judicial relief "encompasses any 'redress or benefit' provided by a court," and appellate courts routinely "reverse and remand lower court judgments—rather than issuing complete relief." *Denedo*, 556 U.S. at 912. The Federal Respondents never argue that these forms of relief are unavailable.

Instead, they assume that because Petitioner obtained a custody hearing, every issue in this appeal disappeared. That assumption skips the inquiry required

by *Church of Scientology* and *Chafin*. Article III does not ask whether some relief has occurred; it asks whether any effectual relief remains available. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at 12; *Campbell-Ewald*, 577 U.S. at 160–61. The answer is yes.

The continuing consequences of the unreversed judgment underscore the availability of effectual relief. Petitioner remains in removal proceedings, under DHS authority, bound by conditions of release, and subject to possible re-detention. Conditional release can preserve a live controversy where continuing restraints or the possibility of renewed custody leave the petitioner with a concrete stake in the outcome. *Rodriguez*, 578 F.3d at 1039–40. These circumstances distinguish this case from decisions holding that release mooted a petition where the petitioner sought only release and alleged no continuing collateral consequence or effective remedy. *Bacilio-Sabastian*, 980 F.3d 480; *Sule*, 1999 U.S. App. LEXIS 20637; *Riley*, 310 F.3d 1253; *Soliman*, 296 F.3d 1237.

Moreover, The Federal Respondents do not—and cannot—show that the judgment imposing the wrong statutory framework has ceased to carry legal consequences. A judgment identifying the wrong detention statute creates consequences beyond immediate custody. It establishes a legal classification that governs future custody decisions and constrains Petitioner's ability to challenge detention under § 1226(a. The judgment remains in effect and defines the parties'

legal relationship. The fact that Petitioner received a custody hearing does not eliminate the judgment's continuing effect or render it immune from review.

A case does not become moot when an intervening change merely affects arguments on the merits without depriving the court of the ability to provide effectual relief. *Hassoun v. Searls*, 976 F.3d 121, 126–27 (2d Cir. 2020).

The Federal Respondents conflate practical relief from custody with appellate relief from an erroneous judgment; the two are distinct. Here, this Court retains full authority to grant appellate relief by reversing, vacating, or remanding the judgment below. Because effectual relief remains available, the case is not moot. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at 12; *Denedo*, 556 U.S. at 912; *Campbell-Ewald*, 577 U.S. at 160–61.

The Federal Respondents have not shown mootness. They apply the wrong standard, ignore available appellate relief, and treat one consequence of the judgment as the entire controversy. Their motion should be denied.

## IV. SIXTH CIRCUIT IMMIGRATION DETENTION JURISPRUDENCE

The Supreme Court's Article III principles operate in concrete contexts. This Court has applied them in immigration detention, recognizing that release from physical custody does not automatically extinguish a pending habeas challenge where the petitioner remains subject to the continuing authority of the immigration

11

laws.

In *Rosales-Garcia v. Holland*, the Government argued that an immigration detainee's release on parole deprived federal courts of jurisdiction over his habeas petition. Sitting en banc, this Court rejected that argument, recognizing that release from confinement did not end the legal restraints imposed by the immigration laws or the risk of renewed detention should parole be revoked. Because those continuing restraints affected the petitioner's legal rights and effective judicial relief remained available, the controversy was not moot. *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc).

The principle is clear: Article III does not turn solely on whether an individual remains physically confined. The inquiry focuses on the continuing legal relationship between the parties and whether the challenged governmental action continues to produce legal consequences susceptible to judicial relief. Those same considerations are present here.

Petitioner has not completed removal proceedings, has not been admitted into the United States, and has not been released from DHS jurisdiction. He remains under DHS supervision and subject to re-detention throughout removal proceedings if DHS determines further custody is warranted. Conditional release can preserve a live controversy where continuing restraints or the possibility of renewed custody leave the petitioner with a concrete stake. *Rodriguez*, 578 F.3d at

1039–40.

Consequently, the district court's determination that detention arose under § 1225(b), rather than § 1226(a), continues to define the statutory authority under which DHS may exercise custody. §§ 1225(b), 1226(a. A judgment identifying the wrong statutory basis for detention creates consequences beyond immediate custody; it establishes a classification that governs future custody decisions and constrains Petitioner's ability to challenge detention under the proper statute.

Those continuing consequences distinguish this appeal from the authorities The Federal Respondents cite. They do not attempt to distinguish *Rosales-Garcia*, nor do they cite any subsequent Sixth Circuit decision holding that an immigration detainee's receipt of a custody hearing, or release on bond during removal proceedings, automatically moots an appeal challenging the statutory basis for detention. The absence of such authority is unsurprising.

Under The Federal Respondents' rule, the Government could avoid review of important statutory questions simply by providing a custody hearing after an appeal is perfected while preserving an unreviewed judgment. Nothing in *Rosales-Garcia* or subsequent decisions endorses that result.

Instead, *Rosales-Garcia* confirms *Chafin* and *Church of Scientology*: where a petitioner remains subject to the Government's continuing legal authority and effective appellate relief remains available, release from custody does not, standing

alone, deprive courts of jurisdiction. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at 12. This principle is reinforced by the distinction between challenges to detention itself and challenges to the statutory classification governing detention. In cases where release mooted the petition, the petitioner challenged only detention and sought only release. *Bacilio-Sabastian*, 980 F.3d 480; *Sule*, 1999 U.S. App. LEXIS 20637; *Riley*, 310 F.3d 1253; *Soliman*, 296 F.3d 1237. Once released, no effectual relief remained because the petitioner sought nothing beyond freedom from confinement and identified no collateral consequence. *Bacilio-Sabastian*, 980 F.3d 480; *Sule*, 1999 U.S. App. LEXIS 20637.

Here, by contrast, Petitioner challenges the legal framework governing detention—the holding that § 1225(b), rather than § 1226(a), supplies statutory authority. That determination remains in effect, defines the parties' legal relationship, and continues to produce consequences susceptible to judicial relief, including the precedential classification of detention under the wrong statute and the constraint that classification places on future custody challenges.

A case does not become moot when an intervening change merely affects merits arguments without depriving the court of the ability to provide effectual relief. *Hassoun*, 976 F.3d at 126–27. The Federal Respondents provided a custody hearing—one requested remedy—but left the statutory holding intact. This Court

14

retains full authority to reverse or vacate that holding, remand for application of the correct statute, and eliminate the ongoing consequences of the judgment.

Moreover, the motion relies on The Federal Respondents' own voluntary conduct. They chose to provide a hearing after the appeal was perfected, then argue that their unilateral action moots the appeal. But voluntary cessation does not moot a case unless it is absolutely clear the challenged behavior cannot reasonably be expected to recur. *Already*, 568 U.S. at 91; *West Virginia*, 597 U.S. at 708. The party claiming mootness based on its own conduct bears a formidable burden. Id. The Federal Respondents have not carried that burden. Nothing prevents the Government from detaining Petitioner again under the same erroneous statutory classification or applying the unreversed holding to future detention decisions. Nothing in the motion shows that it is absolutely clear that detention under the wrong statute could not reasonably recur.

Accordingly, this Court's immigration detention jurisprudence, reinforced by Supreme Court mootness doctrine, confirms that The Federal Respondents have not shown mootness. Petitioner remains subject to the continuing legal authority of the immigration laws; the judgment continues to produce legal consequences; effective appellate relief remains available. Under *Rosales-Garcia*, *Chafin*, and *Church of Scientology*, those circumstances preserve a live controversy, and the motion must be denied.

## V. THE FEDERAL RESPONDENTS' AUTHORITIES DO NOT RESOLVE THIS QUESTION

Article III limits federal courts to resolving live "Cases" and "Controversies," not issuing advisory opinions. *Campbell-Ewald*, 577 U.S. at 160. A plaintiff must maintain a personal stake in the outcome at all stages. Id. An action becomes moot only if intervening circumstances deprive the plaintiff of that stake, making it "impossible for a court to grant any effectual relief whatever." *Church of Scientology*, 506 U.S. at 12. The core mootness test is whether relief would, if granted, make a difference to the parties' legal interests. *Calderon*, 518 U.S. at 150. Under these standards, The Federal Respondents' authorities are distinguishable and do not compel dismissal.

The cited cases involved a complete inability to grant relief. Unlike those decisions, where later developments left courts unable to fashion any effectual relief, this appeal presents a concrete controversy. The parties retain a direct interest in the outcome, and this Court can issue a decree that alters their legal relations. *Chafin*, 568 U.S. at 172.

*Genesis Healthcare Corp. v. Symczyk* held an FLSA collective action moot because the named plaintiff's claim was fully satisfied before any others had opted in, leaving her with no personal interest. *Campbell-Ewald*, 577 U.S. at 160–61. That case does not support dismissal here. Unlike *Genesis Healthcare*, where the

16

plaintiff's interest was extinguished, Petitioner maintains a continuing stake in the statutory framework governing his custody.

*Calderon* illustrates why this appeal remains live. There, even though steps toward retrial had begun, the appellate court could still grant relief to the State by releasing it from the obligation to conduct a new trial. 518 U.S. at 150. Because an appellate decision would affect active legal interests, liabilities, or rights, the court retained authority to grant effectual relief and was required to exercise jurisdiction. Id. The present appeal is analogous: this Court's decision will directly affect the statutory basis and conditions of Petitioner's custody, so effective judicial relief remains available and mootness does not apply.

Perhaps the most revealing feature of The Federal Respondents' motion is what it does not cite. They identify no published Sixth Circuit immigration decision holding that an immigration detainee's receipt of a custody hearing, or release on bond during removal proceedings, automatically moots an appeal challenging the statutory basis for detention, and no decision holding that a judgment rejecting such a statutory challenge loses all legal consequence because DHS later provides a required hearing.

That omission matters. The inquiry is not whether Petitioner received some practical relief while the appeal was pending; it is whether this Court can still grant any effectual relief. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at

17

12. The Federal Respondents' authorities do not answer that question in this context. They rely on general Article III decisions outside immigration detention and do not address an appeal from an unreversed judgment classifying detention under § 1225(b), rather than § 1226(a), while removal proceedings and DHS supervision remain ongoing. §§ 1225(b), 1226(a).

Where effective appellate relief remains, even partial relief defeats mootness. *Chafin*, 568 U.S. at 172; *Calderon*, 518 U.S. at 150. The Federal Respondents cannot avoid review by invoking generalized mootness principles divorced from the judgment's legal consequences. Because none of their authorities shows that this Court is unable to reverse, vacate, or remand the statutory ruling, they have not shown mootness.

## VI. THE FEDERAL RESPONDENTS' MOTION IMPROPERLY RELIES ON FUTURE EVENTS

The Federal Respondents close by noting that the Government has filed a petition for certiorari seeking review of *Lopez-Campos*. But a pending certiorari petition does not diminish the precedential force of a published Sixth Circuit decision. A published decision remains binding unless and until overruled by the Supreme Court or by this Court en banc. *Lopez-Campos* is controlling circuit law. This Court must decide the motion under current law, not speculation about future Supreme Court action. A pending certiorari petition is not a stay, reversal, or

18

overruling of precedent. If the mere filing of a petition weakened binding authority, any litigant could attempt to suspend circuit law simply by seeking review. Federal appellate practice recognizes no such rule, and The Federal Respondents cite none.

Their position is internally inconsistent. They rely on the custody hearing as the event that supposedly moots this appeal, yet that hearing occurred only after *Lopez-Campos* changed governing circuit law. The Federal Respondents cannot rely on *Lopez-Campos* to explain why Petitioner received a hearing while simultaneously suggesting that *Lopez-Campos* lacks force to govern its consequences.

At present, *Lopez-Campos* states the controlling law of this Circuit. The mootness question must be evaluated under that framework, not against the possibility that the Supreme Court may later alter it. Because The Federal Respondents' motion rests on speculation about future developments rather than the law now governing this appeal, it provides no basis for dismissal.

## VII. EVEN IF MOOT, THE FEDERAL RESPONDENTS ARE NOT ENTITLED TO THEIR REQUESTED RELIEF

Even assuming arguendo that the custody hearing and release have rendered the merits moot, The Federal Respondents are still not entitled to dismissal preserving the district court's judgment. That is not the remedy prescribed by the

19

Supreme Court.

"The established practice" when a civil case "has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *Munsingwear*, 340 U.S. at 39. The purpose is straightforward: to prevent an unreviewed judgment from producing future legal consequences after appellate review becomes impossible. The Court has consistently reaffirmed that principle.

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, the Court explained that vacatur is an equitable remedy intended to protect litigants from the continuing effects of judgments that become unreviewable through circumstances beyond their control, while recognizing different considerations when mootness results from voluntary settlement. 513 U.S. 18, 26–27 (1994). In *Camreta v. Greene*, the Court likewise reaffirmed that vacatur exists to prevent a party from being bound by an adverse judgment that becomes insulated from review through happenstance rather than voluntary action.

Here, Petitioner timely appealed, diligently pursued review, and fully briefed the merits. He neither abandoned his appeal nor settled his claims, nor voluntarily relinquished his right to review. The alleged mootness resulted from The Federal Respondents' unilateral decision to provide a custody hearing they had argued the law did not require, after this Court decided *Lopez-Campos*. Had The Federal

Respondents provided that hearing before the district court's judgment or before this appeal was perfected, the issue would not have arisen.

Equity weighs against allowing The Federal Respondents to preserve the judgment while avoiding appellate review. Their requested disposition would produce precisely the result *Munsingwear* was designed to prevent: the Government would retain the benefit of an adverse judgment while depriving Petitioner of any meaningful opportunity to obtain review. The district court's statutory analysis would remain on the books despite never having been tested against the controlling law announced in *Lopez-Campos*. *Munsingwear*, 340 U.S. at 39–40.

The Supreme Court has rejected that result. Accordingly, if this Court concludes that intervening events have deprived it of jurisdiction to decide the merits, the proper disposition is not dismissal leaving the judgment intact; it is vacatur and remand with instructions to dismiss the petition as moot. *Alvarez*, 558 U.S. at 94.

The Federal Respondents' motion therefore presents only two permissible outcomes. If, as Petitioner submits, this Court retains authority to grant effectual appellate relief, the appeal remains justiciable and the motion must be denied. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at 12. If instead the Court concludes that subsequent events have frustrated appellate

review, *Munsingwear*, *Bonner Mall*, and *Alvarez* require vacatur of the judgment before dismissal. *Munsingwear*, 340 U.S. at 39–40; *Alvarez*, 558 U.S. at 94; *Bonner Mall*, 513 U.S. at 26–27. Under either analysis, The Federal Respondents are not entitled to preserve an unreversed judgment while simultaneously avoiding review of the statutory classification it imposes. The Federal Respondents' motion presents only two legally permissible outcomes. If, as Petitioner submits, this Court retains authority to grant effectual appellate relief, the appeal remains justiciable and the motion must be denied. *Chafin*, 568 U.S. at 172; *Church of Scientology*, 506 U.S. at 12.

If, instead, the Court concludes that intervening events have frustrated appellate review, Supreme Court precedent requires vacatur of the district court's judgment before dismissal. *Munsingwear*, 340 U.S. at 39–40; *Alvarez*, 558 U.S. at 94; *Bonner Mall*, 513 U.S. at 26–27. Under either analysis, The Federal Respondents are not entitled to preserve an unreversed judgment while simultaneously avoiding review of the statutory classification it imposes.

Because Petitioner remains subject to the continuing legal authority of the immigration laws, the district court's judgment continues to carry legal consequences, and effective appellate relief remains available.

## CONCLUSION

For the foregoing reasons, this Court should reject The Federal Respondents'

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Fed. R. App. P. 27(d)(1), 27(d)(2)(A), (or 27(d)(3)(C) if a reply to a motion), 28(a)(10); 32(a)(6); 32(g)(1) and 5th Cir. R. 32.3; 35(b)(2)(A), or 40(b)(1) as applicable, I certify that the attached brief complies with the above-referenced limits as follows:

1. The writing or reply uses proportionally spaced Times New Roman, typeface, and 14 typeface points;

2. And contains 4,754 words, including foot notes.

/s/_Bernal Peter Ojeda_____
Bernal Peter Ojeda
Attorney for Appellants
Post Office Box 3664
Westlake Village, CA 91359-0664
Telephone (888) 450-2501

Dated: 7/08/2026

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all

counsel of record and/or appropriate government counsel in accordance with the

Federal Rules of Civil Procedure and the Local Rules of this Court via CM/ECF.

/s/ Bernal Peter Ojeda
Bernal Peter Ojeda
Dated: July 8, 2026